CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 18, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

Hernan Navarro,

Plaintiff,

v.

Warden I. Hamilton *et al.*,

Defendants.

Civil Action No. 7:25-cv-00803

**MEMORANDUM OPINION**

Plaintiff Hernan Navarro, a prisoner proceeding *pro se*, brought this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights that arose when he was incarcerated at Keen Mountain Correctional Center (KMCC). (Compl. (Dkt. 1).) Navarro alleges that officers used excessive force during a facility lockdown and were deliberately indifferent to his serious medical needs that resulted from the incident. Defendants move for summary judgment, arguing that Navarro did not exhaust his administrative remedies. (Dkt. 33.) Navarro did not respond to this motion, but has filed his own motion for summary judgment. (Dkt. 32.) For the reasons stated below, Defendants' motion will be granted, and Navarro's motion will be denied.

## I. Background

### A. Plaintiff's Allegations

Navarro has sued Warden I. Hamilton, Correctional Officers Boyd, Williams, and Ball, Sergeant Flemings, R. Clevinger, and Lieutenant Z. Tuggle. (*See* Compl. 3–4.)

Navarro alleges that on May 26, 2025, at around 10:30 a.m., officers arrived in his unit yelling, "lockdown!" (*Id.* at 5.) Navarro talked with the officers and agreed that when they left the pod, he would lock down (*i.e.*, go into his cell), which he later did. (*Id.*) A few hours later, the Warden arrived with the Strike Force and "bombarded" Navarro's cell. Navarro alleges that the Strike Force was not needed because the Warden "did look at the MaxPro Footage and saw everyone had locked down (so he should have call off the Strike Force) but still allowed the Strike Force to come into A4 Pod with aggression." (*Id.*)

According to Navarro, he was having an anxiety attack, but this was ignored by the Strike Force and the Warden. (*Id.*) Sergeant Flemings pepper sprayed Navarro during this episode, then the Strike Force slammed Navarro on the ground, handcuffed him, and electrocuted him. (*Id.*) Navarro was overpowered, and Officer Boyd placed handcuffs on Navarro and "squeezed it as hard as he could into my left wrist causing the cuffs to penetrate my skin and it damaged my nerves in my left hand." (*Id.*) Then the officers shocked Navarro with an "electric shield" while he was handcuffed. (*Id.*)

Navarro was taken to a medical office and was stripped naked while Officer Boyd was still squeezing the handcuffs into his flesh. (*Id.* at 6.) Navarro asked for a mental health check from Clevinger, but Clevinger did not arrive for assistance. (*Id.*) Navarro was kept naked and in chains for ten hours. (*Id.*) Lieutenant Dye told Navarro that if he behaved the chains would be removed. (*Id.*) Navarro claims that he was punished because he did not lock down fast enough. (*Id.*)

Navarro alleges that he "completed all grievances and I would not have sued the defendants had they not try to get around my grievances and get to the problem." (*Id.* at 7; Dkt. 1-1 (eleven pages of grievance activity attached to complaint).) He requests $300,000 in monetary damages. (*Id.* at 8.)

**B. Facts in Support of Defendants' Motion for Summary Judgment**

Defendants' sole argument is that Navarro did not exhaust his administrative remedies. (Defs.' Mem. in Supp. of Mot. for Summ. J. (Dkt. 34).) In support of their motion for summary judgment, Defendants provide the affidavit of H. Hardin, grievance coordinator at KMCC. (Hardin Aff. (Dkt. 34-1).) Hardin's affidavit describes the grievance procedure mechanism for facilities within the Virginia Department of Corrections ("VDOC"). (*Id.* ¶¶ 4–15 (discussing the procedural requirements of VDOC Operating Procedure ("OP") 866.1); Encl. A (OP 866.1).)

In pertinent part, the grievance procedure requires that inmates must submit a Regular Grievance within 30 calendar days of the alleged incident unless exceptions apply. (Hardin Aff. ¶ 6; OP 866.1 at 7 of 18.)) Prior to submitting a Regular Grievance, the inmate must demonstrate a good-faith effort to informally resolve a complaint. (Hardin Aff. ¶ 6; OP 866.1 at 5 of 18.) This can be accomplished by submitting a Written Complaint. (*Id.*) If an inmate is dissatisfied with the response or receives no response to their Written Complaint within 15 days, then the inmate may file a Regular Grievance. (Hardin Aff. ¶ 6; OP 866.1 at 6 of 18.)) Regular Grievances must be accepted into the grievance procedure and appealed through all applicable levels of review before being considered exhausted. (Hardin Aff.¶ 10; *see also id.* ¶ 8 (describing three levels of review available for Regular Grievances once accepted); OP 866.1

at 13 of 18.) ("The exhaustion requirement is met only when a regular grievance has been accepted into the grievance process and appealed without satisfactory resolution of the issue.")

VDOC records reflect that on May 28, 2025, Navarro submitted a Written Complaint (Log No. KMCC-25-WRI-01244) complaining that, on May 26, 2025, at approximately 10:50 a.m., Sgt. Fleming shot Navarro in the face with pepper spray for no reason. (Hardin Aff. ¶ 12, Encl. B.) The Written Complaint also states that Officer Viars shocked Navarro with his shield; Officers Boyd and Williams handcuffed Navarro so tightly that it caused his wrist to swell and bleed; and that Navarro was stripped naked and placed in Med ISO 2 for no reason. (*Id.*) The Written Complaint was received on June 3, 2025, and a response was issued on June 16. (*Id.*)

Navarro filed another Written Complaint (Log No. KMCC-25-WRI-02044) about the May 28 incident on July 22, 2025. (Hardin Aff. ¶ 13, Encl. C.) This complaint was received in the Grievance Department on August 20 and a response was issued by Clevinger on September 4, 2025. (*Id.*) Hardin avers that Navarro did not file any Regular Grievances regarding the allegations in the complaint in this lawsuit. (Hardin Aff. ¶ 14.)

All VDOC inmates are oriented to the Offender Grievance Procedure when they are initially received into the VDOC and when they are transferred to a different facility. (Hardin Aff ¶ 15, Encl. D.) Navarro was located at KMCC from April 21, 2027, to June 11, 2025. (*Id.*) Navarro's Inmate Grievance Log shows that Navarro used the grievance procedure on several occasions at KMCC. (*Id.*)

**C. Navarro's Motion for Summary Judgment**

Navarro argues that he is entitled to summary judgment on his Eighth Amendment claim because Defendants "all did take part in using excessive force against plaintiff." (Dkt. 32 at 1.) Navarro also argues that there was no explanation for using an electric shield, squeezing the handcuffs to injure his wrist, being stripped naked and hog tied, or Clevinger not doing a wellness check. (*Id.*) Thus, he requests judgment for costs, $5,000 for abuse, and to be "sent back to the sending state" and never returned to VDOC. (*Id.* at 1–2.) Navarro's motion does not mention exhaustion of administrative remedies.[1]

## II. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783

[1] Navarro did not file a response to Defendants' motion for summary judgment. The record in this case shows that Navarro propounded certain discovery requests, and Defendants provided responses to Navarro's requests. (Dkts. 31, 36.) Navarro has not argued that Defendants' responses are insufficient or that he needs more discovery to respond to Defendants' motion or to support his own motion.

(4th Cir. 2021) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

When evaluating cross-motions for summary judgment, the court should "rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the [Federal Rule of Civil Procedure] 56 standard." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (citation omitted) (alteration in original).

## III. Analysis

### A. Defendants' Motion for Summary Judgment

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must ordinarily follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The requirement is one of "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citation omitted). On the other hand, "[a] prisoner need not exhaust remedies if they are not 'available'," *Ross v. Blake*, 578 U.S. 632, 636 (2016), which may be the case "if a prisoner, through no fault of his own, was prevented from availing himself of it," *Moore*, 517 F.3d at 725.

Defendants argue that they are entitled to summary judgment because Navarro did not submit any Regular Grievances following his Written Complaints for the Defendants' conduct

he alleges in his Complaint. (Defs.' Mem. at 9.) The court notes that this assertion appears to be contradicted by certain attachments to Navarro's complaint, which include two Regular Grievances that pertain to the allegations in this lawsuit. (Dkt. 1-1 at 2–3, 6–7.) In the first Regular Grievance, Navarro refers to Written Complaint No. KMCC-25-WRI-01244, and the regular grievance form was received on September 17, 2025. (*Id.* at 2.) But this grievance was not accepted into the process because of a defect in the informal complaint process. (*Id* at 3.) The rejection page includes a note stating that Navarro "must attach answered written complaint." (*Id.*) The second Regular Grievance form was received on September 24, 2025, and it refers to Written Complaint No. KMCC-25-WRI-02044. (*Id.* at 6.) The written complaint received a response on September 4, 2025. (*Id.* at 5.) The regular grievance form was not accepted into the process because it was untimely on September 24, 2025 and that intakerejection was upheld on appeal on October 6, 2025. (*Id.* at 7.) Nothing in the record shows that Navarro filed a timely grievance that was accepted into the grievance process and then appealed through all applicable levels of review. (*See* Hardin Aff. ¶ 10 (explaining that "an inmate properly exhausts his administrative remedies by timely filing a regular grievance at the institutional level and appealing that regular grievance through all applicable levels of review"); (OP 866.1 at 13 of 18) ("The exhaustion requirement is met only when a regular grievance has been accepted into the grievance process and appealed without satisfactory resolution of the issue.") Thus, the court finds that Navarro has not provided evidence that he properly exhausted his administrative remedies before filing this lawsuit.

In sum, while there is evidence that Navarro attempted to utilize the grievance procedure in some respects, there are no genuine issues of material fact as to whether Navarro

exhausted his administrative remedies. Nor has Navarro presented any factual issues pertaining to whether those remedies may have been unavailable to him. Defendants are therefore entitled to summary judgment.

**B. Navarro's Motion for Summary Judgment**

Navarro has moved for summary judgment and argues, without any supporting evidence, that he is entitled to judgment on the merits of his claims. Navarro has not established that he is entitled to judgment as a matter of law on any of his claims. Moreover, his request for judgment is precluded by his failure to exhaust administrative remedies. The court will therefore deny Navarro's motion.

## IV. Conclusion

The court will issue an order granting Defendants' motion for summary judgment, denying Navarro's motion for summary judgment, and dismissing this case in its entirety.

**ENTERED** this 18th day of November, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE